UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WESS DEASE,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL KOEHN, et. al.,<br><br>　　　　　　　Defendants. | 3:13-cv-00424-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Plaintiff's Motion for Preliminary Injunction. Plaintiff has filed a memorandum of law in support of his motion for preliminary injunction (Doc. # 25)[1], a declaration in support of his motion (Doc. # 24), a notice of motion (Doc. # 26), a request for submission of motion (Doc. # 27)[2], and a proposed order (Doc. # 28). Docs. # 31, # 31-1, # 31-2, # 31-3, and # 31-4 appear to be duplicates of Docs. # 24, # 25, # 26, # 27 and # 28. Defendants filed a response to Plaintiff's motion (Doc. # 34) and Plaintiff filed a reply (Doc. # 39).

　　　After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

　　　Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., Doc. # 11.) The

---

[1] Refers to court's docket number.

[2] The request for submission has been docketed as an action item by the Clerk's office; however, unlike the State court, this court does not require such a request, and as such, it is recommended that the request be denied as moot.

1    events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).
2    (*Id.*)
3          The court screened Plaintiff's original complaint and determined Plaintiff could proceed
4    with his Eighth Amendment claim in Count I that Dr. Koehn and nurses Jones and Schuering
5    (wrongly named by Plaintiff as Shearing) were deliberately indifferent to his serious medical
6    needs, as well as his supervisory liability claim against Jones and Dr. Bannister in Count IV,
7    based on the allegation that they failed to instruct their subordinates to give Plaintiff the correct
8    care, even after they responded to Plaintiff's grievances. (Screening Order 1, Doc. # 5 at 2-3.)
9          The court granted Plaintiff leave to amend as to his retaliation claim in Count II and equal
10   protection claim in Count III. (*Id.*) Specifically, the court advised Plaintiff with respect to Count
11   II that insofar as he alleged that Dr. Koehn, Jones and Schuering denied him medical care in
12   retaliation for expressing his political beliefs, he needed to allege what the political beliefs were
13   and how he expressed them. (*Id.* at 2.) The court discussed that at one point Plaintiff alleged that
14   "there is no regulation that keeps me from expressing silence in this way," and instructed
15   Plaintiff that if he was not expressing his political beliefs, the defendants could not have known
16   of them, let alone have retaliated against him for these beliefs. (*Id.* at 2-3.) With respect to the
17   equal protection claim, Plaintiff claimed that Dr. Koehn, Jones and Schuering were treating him
18   differently from other inmates receiving supplemental meals for their autoimmune diseases
19   because of Plaintiff's "suspect classification." The court instructed Plaintiff that he needed to
20   identify his suspect classification and further describe which inmates were receiving
21   supplemental meals. (*Id.*)
22         Plaintiff submitted an amended complaint which the court screened, and determined that
23   Plaintiff corrected the defects in the original complaint. (Screening Order, 2, Doc. # 10.) The
24   court directed that the amended complaint be filed and served upon the Attorney General's
25   Office. (*Id.*; Am. Compl., Doc. # 11.)
26         Upon further review of the amended complaint, the court takes this opportunity to clarify
27   the status of the claims and defendants as the amended complaint differs from the original in
28

1  ways that were not specifically noted in the screening order which allowed the amended
2  complaint to proceed.
3        The amended complaint names as defendants Dr. Michael Koehn, D.A. (Dawn) Jones,
4  Ned Schuering (wrongly identified by Plaintiff as Shearing), J. (Jon) Garner, and C.S. (Charles)
5  Schardin (wrongly identified by Plaintiff as Chardin). (Doc. # 11.) To be clear, the amended
6  complaint does not name Dr. Bannister as a defendant (as did the original complaint), and adds
7  defendants Garner and Schardin. In addition, the amended complaint omits the retaliation claim
8  previously asserted in Count II of the original complaint.
9        Therefore, the amended complaint is proceeding with respect to the following claims and
10 defendants: (1) Count I-an Eighth Amendment claim that defendants Dr. Koehn, Jones and
11 Schuering were deliberately indifferent to Plaintiff's serious medical needs (as was asserted in
12 the original complaint); (2) Count II-an equal protection claim against Jones, Koehn, Schuering
13 and Schardin based on the allegation that these defendants denied Plaintiff's repeated requests
14 for supplemental food portions while other inmates were given supplemental portions$^3$; and
15 (3) Count III-a supervisory liability claim against Jones, Garner and Schardin based on the
16 allegation that these defendants answered Plaintiff's grievances on these issues which failed to
17 rectify the alleged problems, and that Jones, Garner and Schardin failed to instruct, supervise and
18 train subordinates to avoid deliberate indifference.
19       Defendants have answered the amended complaint. (Doc. # 18.)
20       Plaintiff moves for a preliminary injunction. (Docs. # 24, # 25.) Plaintiff contends that he
21 lost over twenty pounds in four months, and a total of forty pounds as a result of taking cortisol
22 steroids. (Doc. # 25 at 6.) As a result, he requested additional food portions, but the Defendants
23 denied his requests. (Doc. # 25 at 6.) He seeks an injunction "to restrain the defendants from
24 violating [his] rights." (*Id.*) Specifically, he seeks adequate portions of food. (Doc. # 24 at 3 ¶ 6.)

---

[3] Plaintiff acknowledges that he is not a member of a protected class, but instead is proceeding on a "class of one theory," alleging that there is no rational basis for the difference in his treatment and other inmates who have lost weight who receive supplemental meals.

## II. LEGAL STANDARD-PRELIMINARY INJUNCTION

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

In addition, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

///

## III. DISCUSSION

### A. Plaintiff's Declaration

Plaintiff provides a declaration in support of his motion. (Doc. # 24.) He asserts that he contracted sarcoidosis six years ago. (Doc. # 24 at 1 ¶ 2.) At that time, he was sent to Northern Nevada Correctional Center (NNCC) and he told Dr. Gedney that he had lost over twenty pounds and asked for double portions and she told him: "They don't give out double portions here." (*Id*.) Six years passed and Plaintiff's weight dropped from 189 lbs. to 176 lbs., and on October 20, 2012, Plaintiff told Dr. Koehn that he had lost another 13 lbs. (*Id*. at 2 ¶ 3.) He asked Dr. Koehn for double portions of food. (*Id*.) Dr. Koehn responded: "That's just a bowel movement." (*Id*.)

On February 15, 2013, Plaintiff watched the Dr. Oz show which discussed the function of cortisol steroids in the body−that they cause a chemical imbalance which, in turn, causes a boost in metabolism, which makes a person hungry soon after eating, and to address the chemical imbalance the person will need to eat more food. (*Id*. at 3 ¶ 4.) Plaintiff asserts that he has this chemical imbalance which causes him to have a high metabolism and hunger after eating. (*Id*. ¶ 5.)  He states that once he burns up the calories he has consumed, his body burns muscle and breaks down muscle tissue. (*Id*.) Plaintiff also states that he suffers from constipation, hunger pains, kidney pain, muscle soreness, sluggishness, and emotional harm. (*Id*. ¶ 6.)

Plaintiff indicates that he did not mention these things in his routine exam every three months; however, on February 20, 2013, he sent a kite to medical addressing his issues. (*Id*. at 3-4 ¶ 7.) Nine days later, on March 1, 2013, Plaintiff was taken to an exam room and saw defendant Schuering, who ordered Plaintiff to stand on the scale, and Plaintiff notes that he lost four pounds from his previous examination. (*Id*.) Plaintiff asserts that he told Schuering that he was a "mesomorph" but Schuering did not respond. (*Id*.) Schuering asked Plaintiff how much he weighed when he came to prison, and Plaintiff responded that he weighed 210 lbs. (*Id*.) Schuering approached Plaintiff with a BMI chart, and showed that for Plaintiff's height, 6 feet three inches, and the weight of 165 lbs., the BMI was normal. (*Id*.) Plaintiff once again told Schuering that he was a "mesomorph" and Schuering said: "Bye, bye. I'll look into this while you look into that." (*Id*.) Plaintiff maintains that in order to fully ascertain a person's BMI, the

1  waist size, chest size and fat percentage must be used in addition to the height, weight and body
2  type. (*Id*. ¶ 8.) He asserts that the prison's BMI chart lacks these essential elements. (*Id*.) He
3  claims to have a 36 inch waist, 50 inch chest and a "mesomorph" body type, which does not fit
4  into the prison's BMI category for a person who is six feet three inches tall and 165 lbs. (*Id*. ¶ 9.)
5      On March 4, 2013, Plaintiff sent another kite explaining the three different body types to
6  the nurse. (*Id*. at 5 ¶ 10.)
7      On April 10, 2013, Plaintiff filed an informal level grievance, and defendant Jones denied
8  the grievance. (*Id*. ¶ 12.) He filed a first level grievance on April 10, 2013 which was denied, and
9  appealed to Dr. Bannister for review on May 20, 2013. (*Id*.) It was denied. (*Id*.)
10     Plaintiff states that he knows a lot of similarly situated inmates who are getting
11 supplemental diets from medical while Plaintiff is being denied adequate portions. (*Id*. ¶ 17.)
12     On May 3, 2013, Plaintiff told Dr. Koehn that weight loss was a problem, and his weight
13 had dropped from 174 lbs. to 169 lbs. (*Id*. ¶ 18.) He told Dr. Koehn that the medication created a
14 chemical imbalance which increased his metabolism and Dr. Koehn told him that the medication
15 causes people to gain weight. (*Id*.) Plaintiff also told Dr. Koehn that he is a "mesomorph", to
16 which Dr. Koehn said: "I am a mesomorph, and you are thinner than most." (*Id*.) Plaintiff says
17 that he explained that he weighed 210 lbs. when he came to prison. Dr. Koehn told him that he
18 had to lose 18 % (of his body weight, presumably) before could he receive double portions. (*Id*.)

**B. Likelihood of Success on the Merits**

20     Plaintiff contends he is likely to succeed on the merits because his weight loss is
21 apparent, and Defendants have chosen to ignore it, and have failed to provide him with
22 nutritionally adequate food. (Doc. # 25 at 9-11.) He also asserts that Defendants were
23 deliberately indifferent to his serious medical needs because they have inadequate and
24 unqualified medical staff. (*Id*. at 13.)
25     With respect to his equal protection claim, Plaintiff argues that Defendants gave other
26 inmates a supplemental diet while he did not get a supplemental diet. (*Id*. at 14.) He mentions
27 that this is because he is part of a "suspect class," but does not identify what class he belongs to.
28 (*Id*.) He asserts that prison officials cannot treat him differently because of his political beliefs,

- 6 -

1  but does not identify what those beliefs are or how he was treated differently because of them.
2  (*Id*. at 14-15.) He further claims that Defendants retaliated against him by denying him adequate
3  food portions because he exercised his political beliefs (*id*. at 15), but again does not state
4  identify those beliefs.

5  He also makes reference to Dr. Bannister, who was not included as a defendant in the
6  amended complaint. (*See* Doc. # 25 at 15.) He asserts that Jones and Bannister failed to correct
7  the constitutional violations on administrative appeal. (*Id*.)

8  Defendants argue that Plaintiff does not establish a likelihood of success on the merits,
9  because he states that his weight loss is apparent but has been ignored but provides not a single
10  measurement of his weight to support his claim of malnourishment or weight loss. (Doc. # 34 at
11  4-5.)

12  To succeed on his Eighth Amendment claim, Plaintiff must establish that Defendants
13  were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104
14  (1976). A claim for deliberate indifference involves the examination of two elements: "the
15  seriousness of the prisoner's medical need and the nature of the defendant's response to that
16  need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir.
17  2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need
18  exists if the failure to treat a prisoner's condition could result in further significant injury or the
19  'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429
20  U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in
21  nature include "an injury that a reasonable doctor or patient would find important and worthy of
22  comment or treatment; the presence of a medical condition that significantly affects an
23  individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974
24  F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted)
25  (finding that inmate whose jaw was broken and mouth was wired shut for several months
26  demonstrated a serious medical need).

27  If the medical need is "serious," the plaintiff must show that the defendant acted with
28  deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Plaintiff has not established that he suffers from a serious medical need, or that Defendants were deliberately indifferent to that need. While Plaintiff makes generalizations about his weight, he provides no medical records to substantiate his claim of significant weight loss. Defendants, on the other hand, provide the most recent medical record containing Plaintiff's weight which indicates Plaintiff weighed 202.8 lbs. in May 2014. (Doc. # 35-1 at 2.) Plaintiff admits that when he entered prison he weighed 210 lbs. In his reply, Plaintiff accuses Dr. Koehn of falsifying this record and states that he did not weigh 202.8 lbs.; however, Plaintiff provides no evidence to substantiate this claim. Nor does Plaintiff state how much he claims he weighed at that time. Moreover, Plaintiff provides no evidence to establish a likelihood of success on the subjective prong of his Eighth Amendment claim−that Defendants knew of and disregarded an excessive risk to his health. Without records substantiating his weight loss and the alleged deleterious effects on his health, it cannot be said that he has a likelihood of success on his Eighth Amendment claim.

Nor has Plaintiff established a likelihood of success on his equal protection claim. While Plaintiff generally alleges that he has not been provided with double portions while other inmates have, and he speculates that this is to punish him, he provides no evidence to support his claim. *See Hartmann v. California Dep't of Corr.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citation and internal quotation marks omitted) ("To prevail on an Equal Protection claim brought under § 1983, Plaintiffs must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class."); *Squaw*

1  *Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by*
2  *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) (in a "class of one" equal protection
3  theory, plaintiff must still demonstrate he has been intentionally treated differently from others
4  similarly situated and there is no rational basis for the difference in treatment).

**C. Irreparable Harm**

Plaintiff claims that as a result of his weight loss he is experiencing atrophy. (Doc. # 25 at 7.) He also asserts that his weight loss is causing him great anguish. (*Id*. at 8.)

Defendants argue that Plaintiff has not established a likelihood of irreparable harm. (Doc. # 34 at 5.) They state that his last recorded weight in his medical chart from May 9, 2014, indicates Plaintiff weighed 202.8 lbs. (*Id*., Ex. 1 (Mangum Decl.)[4].) Since that time, he has refused medical evaluations for his chronic care treatment. (*Id*., Ex. 2.) As such, Defendants assert that Plaintiff has not proven that he has lost a significant amount of weight or is in jeopardy of suffering significant weight loss. (*Id*.)

Plaintiff's Chronic Disease (CD) Clinic Follow Up record from May 9, 2104, does indicate that Plaintiff's weight was 202.8 lbs. (Doc. # 35-1 at 2.) In addition, it appears Plaintiff did refuse care and treatment on January 12, 2014, August 1, 2014, August 22, 2014, November 7, 2014 (Doc. # 35-2 at 2-5.)

In his reply, Plaintiff asserts that Dr. Koehn falsified his medical records by writing that Plaintiff weighed 202.8 lbs. when he does not. (Doc. # 39 at 1.) Plaintiff asserts that his entire medical file will show that at one point he weighed forty pounds less than this. (*Id*. at 2.)

The court finds Plaintiff has not demonstrated a likelihood of irreparable harm. While Plaintiff asserts that he has lost a significant amount of weight and is experiencing atrophy, he provides no evidence in support of his allegations. Defendants, on the other hand, have provided evidence that at the most recent record that contains his weight, Plaintiff weighed 202.8 lbs, and Plaintiff admits that when he came to prison he weighed 210 lbs. While Plaintiff asserts that

---

[4] Cheryl Mangum is the Health Information Coordinator at ESP, who reviews and analyzes inmate medical files and records. (Doc. # 34-1.) She certifies that Plaintiff's Chronic Disease Follow Up dated May 9, 2014 is the most recent medical record for Plaintiff containing a weight measurement. (*Id*.)

- 9 -

1  Dr. Koehn falsified this weight, he provides no evidence to support this claim. He states that his
2  medical file will substantiate his claims, yet provides none of his medical records in support of
3  his motion. Nor does he state anything in his reply to explain the refusal of care and treatment on
4  various occasions in 2014.

5  In sum, the court cannot determine on the basis of the record before it that Plaintiff is
6  likely to suffer irreparable harm in the absence of an injunction ordering Defendants to provide
7  Plaintiff with double portions.

**D. Public Interest**

9  Plaintiff asserts that the injunction will serve the public interest because it is always in the
10  public interest for prison officials to obey the law. (Doc. # 25 at 17.)

11  Defendants admit that following the law is in the public interest, but there is no indication
12  they have violated the law, and giving Plaintiff special treatment is not in the public interest. (*Id*.)

13  Since Plaintiff has not submitted evidence to substantiate his claim that he has suffered
14  significant weight loss which is jeopardizing his healthy, the court cannot conclude that an
15  injunction that he be provided with double portions is in the public interest.

**E. Balance of Hardships**

17  Plaintiff contends that he is going to "waste away and die", while the only suffering
18  Defendants will endure is sending Plaintiff to a specialist or providing him with double portions.
19  (Doc. # 25 at 9.)

20  Defendants argue that the issuance of an injunction would significantly interfere with the
21  internal operations of ESP and would replace the sound judgment of ESP's medical staff. (Doc. #
22  34 at 5.) Giving Plaintiff double portions would give rise to jealousy and strife among other
23  inmates. (*Id*.)

24  Plaintiff has not met his burden of showing he will suffer harm in the absence of an
25  injunction, and has not substantiated his claim that he has suffered significant weight loss that is
26  detrimental to his health. As a result, the court cannot conclude that the balance of hardships tips
27  in his favor.

28  ///

**F. Conclusion**

Having failed to meet the prerequisites for injunctive relief, the court recommends that Plaintiff's motion for a preliminary injunction be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's motion for a preliminary injunction (Doc. # 25).

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for submission (Doc. # 27) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  June 2, 2015.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE